IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-03342-KAS

S. A. C.,[1]

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

    This matter is before the Court[2] on the **Social Security Administrative Record** [#9], filed February 22, 2023, in support of Plaintiff's Complaint [#1] seeking review of the decision of the Commissioner of the Social Security Administration ("Defendant" or "Commissioner") denying Plaintiff's claim for disability insurance benefits and supplemental security income pursuant to Title II and Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. On April 28, 2023, Plaintiff filed an Opening Brief [#13] (the "Brief"). Defendant filed a Response [#17] in opposition, and Plaintiff filed a Reply [#20]. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court has reviewed the entire case file and the

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. See [#10, #21, #23]; *Reassignment* [#22].

applicable law. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

## I. Background

On March 21, 2021, Plaintiff filed an application for disability insurance benefits and supplemental security income under Title II and Title XVI, alleging disability beginning June 20, 2020. Tr. 16.[3] On July 13, 2022, an Administrative Law Judge (the "ALJ") issued an unfavorable decision. Tr. 35. On review of this decision, the Appeals Council denied Plaintiff's request for reversal or remand of the ALJ's decision. Tr. 1.

The ALJ first determined that Plaintiff met the insured status requirements of the Act through December 31, 2026, and that she had not engaged in substantial gainful activity ("SGA") since June 20, 2020, the alleged onset date. Tr. 19. The ALJ then found that Plaintiff suffers from the following severe impairments: (1) meralgia paresthetica, (2) fibromyalgia, (3) asthma, (4) seasonal allergic rhinitis, (5) cor pulmonale, (6) right-sided heart failure, and (7) obesity. Tr. 19. However, the ALJ also found that Plaintiff's impairments, either separately or in combination, did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926)." Tr. 24.

The ALJ next concluded that Plaintiff has the residual functional capacity ("RFC") to perform "sedentary work"[4] with the following limitations:

---

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 9 through 9-23, by the sequential transcript numbers instead of the separate docket numbers.

[4] "Sedentary work" is defined as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing

2

> [T]he claimant can occasionally lift and carry 10 pounds and frequently lift and carry less than 10 pounds. She can stand and/or walk 2 hours and sit 6 hours of an 8-hour workday. The claimant can never climb ladders, ropes, or scaffolds, and she can occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs. She can tolerate no more than occasional exposure to temperature extremes, and she can have no exposure to hazards, including unprotected heights.

Tr. 25. Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff could perform her past relevant work as a customer service representative. Tr. 33. He therefore found Plaintiff not disabled at step four of the sequential evaluation. Tr. 35. The ALJ's decision has become the final decision of the Commissioner for purposes of judicial review. 20 C.F.R. §§ 404.981, 416.1481 (explaining that the ALJ's decision becomes the final decision when the Appeals Council denies a request for review).

## II. Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration (SSA) is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The

---

are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effect of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act; rather, to be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See, e.g.*, *Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Hum. Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted).

**A.     The Five-Step Framework**

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750, 751 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether the claimant is "presently engaged in substantial gainful activity." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). If not, the ALJ considers at step two whether the claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," i.e., the "Listings." *Allen*, 357 F.3d at 1142. "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him or] her from performing [his or] her past relevant work." *Wall*, 561 F.3d at 1052. "Even if a claimant is so impaired, the agency considers, at step five, whether [he or] she possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

5

**B.     Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1140 (internal quotation marks and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Broadbent v. Harris*, 698 F.2d 407, 412, 414 (10th Cir. 1983). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. Analysis

Plaintiff argues that the ALJ erred by (1) failing to account for Plaintiff's alleged need to elevate her feet, (2) improperly assessing the limiting effects of Plaintiff's shortness of breath, and (3) not applying the treating physician rule. *Brief* [#13] at iii.[5] The first two arguments pertain to the ALJ's findings at step four of the evaluation process, whereas the third argument posits that the ALJ failed to apply the correct legal test. The Court addresses each argument in turn.

---

[5] Page number citations refer to the document's original numbering, not the numbering used by the Court's CM/ECF docketing system.

6

A.     **Feet Elevation**

Plaintiff argues that the ALJ improperly rejected Plaintiff's testimony regarding her need to elevate her feet due to her edema in the ALJ's formulation of the RFC. *Brief* [#13] at 2. Specifically, Plaintiff argues the ALJ failed to properly consider the fluctuating nature of the swelling and that her edema had been increasing prior to the hearing. *Id.*

Notably, Plaintiff's testimony is the only place in the record that explicitly states a need for leg elevation. Tr. 64-65. Furthermore, this testimony is seemingly inconsistent, with Plaintiff first stating that she needs to elevate her legs 98% of the day before changing this number to 75% of her day. Tr. 65. Pursuant to 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4), an ALJ must consider when there are conflicts between a claimant's statements about the limiting effects of their symptoms and the rest of the medical evidence. Here, there is sufficient evidence that Plaintiff's pulmonary hypertension caused edema in her lower extremities. *Brief* [#13] at 2, 4. However, this evidence does not explicitly support Plaintiff's subjective claims about the severe limiting effects of this edema.

The Court notes that the ALJ specifically considered Plaintiff's claims regarding her need to elevate her legs, in conjunction with her other symptoms, when deciding that she only had the RFC to perform sedentary work. Tr. 26. However, the ALJ did not think the medical evidence was consistent with Plaintiff's claims regarding the intensity, persistence, and limiting effects of this symptom. *Id.* Specifically, the ALJ explained that he did not include a requirement for leg elevation because the medical record showed intact range of motion and strength, citing multiple exhibits which support this assertion. Tr. 28. Thus, the ALJ's decision is supported by substantial evidence, as a reasonable

7

mind could find this evidence adequate to support his conclusion. *See Wilson*, 602 F.3d at 1140.

Furthermore, Plaintiff's argument that the ALJ erred in failing to consider the fluctuating nature of her swelling and the fact her edema seemed to be worsening does not change this analysis. Plaintiff correctly notes that the ALJ "must address significantly probative facts that he rejects." *Brief* [#13] at 5 (citing *Clifton*, 79 F.3d at 1010). However, there is nothing to indicate that these facts are *significantly* probative in determining whether a requirement for leg elevation is appropriate.

Additionally, *Clifton v. Chater* itself notes that "an ALJ is not required to discuss every piece of evidence." 79 F.3d at 1009-10. Notably, "the court 'cannot insist on technical perfection' in reviewing the ALJ's decision." *C.M.G. v. Kijakazi*, No. 21-cv-01822-NRN, 2022 WL 3577263, at *4 (D. Colo. Aug. 19, 2022) (citing *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012)). Thus, the ALJ did not err in failing to explicitly address these facts.

Given that the ALJ's determination is supported by substantial evidence, Plaintiff's call for the Court to give more weight to Plaintiff's subjective claims is an invitation for it to reweigh the evidence, which the Court is unable to do. *See Casias*, 933 F.2d at 800. Accordingly, the Court finds that the ALJ committed no reversible error by not including a requirement for leg elevation when formulating the RFC.

**B.     Shortness of Breath**

Next, Plaintiff argues that the ALJ erred by not properly considering the limiting effects of her shortness of breath. *Brief* [#13] at 6. Specifically, Plaintiff notes that the ALJ did not properly assess the fact that Plaintiff's shortness of breath is worsened upon

8

exertion. *Id.* Plaintiff argues that because her examinations were conducted when she was not exerting herself, they are not an accurate reflection of her condition. *Id.* at 9. Rather, like in her first argument, Plaintiff seems to imply that the Court should look to her own subjective testimony to find an accurate reflection of her limitations. *Id.* at 6-7. Furthermore, she notes that this testimony shows that activities within the sedentary work category constitute exertion for her. *Id.* at 9.

As noted above, an ALJ must consider when there are conflicts between a claimant's statements about the limiting effects of their symptoms and the rest of the medical evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Here, when explaining how he formulated Plaintiff's RFC, the ALJ cited an abundance of evidence showing normal or only slightly abnormal respiratory findings and well-controlled asthma. Tr. 26-28. Thus, the ALJ found Plaintiff's testimony to be inconsistent with the medical record. Tr. 26.

Plaintiff asserts that the ALJ ignored the evidence that her shortness of breath rose to the level of being disabling upon exertion. *Brief* [#13] at 9. However, the ALJ plainly referenced those claims in making his determination that Plaintiff should be reduced to sedentary work. Tr. 28. Furthermore, while the examinations were not conducted while Plaintiff was exerting herself, there is nothing besides her own subjective testimony to support a finding that performing activities permissible in the sedentary work category would constitute exertion.

Even if the Court would have chosen to give more weight to Plaintiff's testimony if the matter had been before it de novo, it "may not displace the agency's choice between two fairly conflicting views." *Lax*, 489 F.3d at 1084 (citation, internal quotation marks, and

9

modification omitted). Accordingly, because the ALJ referenced evidence sufficient to lead a reasonable mind to support his conclusion, the Court finds an absence of reversible error in his determination regarding the limiting effects of Plaintiff's shortness of breath.

**C.   Treating Physician Rule**

Finally, Plaintiff argues that the ALJ erred by not applying the treating physician rule when evaluating Nurse Barajas's opinion.[6] *Brief* [#13] at 18. For background purposes, prior to March 27, 2017, regulations instructed the Commissioner to "give more weight to medical opinions from [claimants'] treating sources." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). These regulations were adopted in 1991 and were similar to a rule from prior case law, known as the "treating physician rule." *See, e.g.*, *Broadbent*, 698 F.2d at 412 (citing *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980)) (stating that "[i]n determining questions of substantiality of evidence, the reports of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government").

However, pursuant to a rule change on March 27, 2017, ALJs do not give controlling weight to any opinion but, rather, consider a variety of factors when determining which opinions are most persuasive. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The two most important factors in this analysis are supportability and consistency. *Id.* This change was enacted, in part, to "allow adjudicators to focus more on the content of the evidence than on the source." Revisions to Rules Regarding the

---

[6] Nurse Barajas is a nurse practitioner who treated Plaintiff. *Brief* [#13] at xi, xv. In her assessment of Plaintiff, Nurse Barajas stated her belief that Plaintiff could stand or walk less than two hours a day, that Plaintiff needs to lie down periodically throughout the day, and that Plaintiff would miss more than two workdays per month due to her conditions. *Id.* at xi.

10

Evaluation of Medical Evidence, 82 Fed. Reg. at 5,853 (Jan. 18, 2017) (to be codified at 20 C.F.R. 404 and 20 C.F.R. 416).

Notably, many courts, including courts in this district, have explicitly held that the new regulations abrogated the treating physician rule. *See, e.g.*, *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (stating that, "[u]nder the current regulations . . . treating physicians are not entitled to special deference"); *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022) (holding that, "[f]or claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies"); *S.E.H. v. Kijakazi*, No. 21-cv-01845-CMA, 2022 WL 6730905, at *3 (D. Colo. Oct. 11, 2022) (stating that "the new regulations set forth in 20 C.F.R. 404.1520c and 416.920c abrogate the treating physician rule"); *T.J.D. v. Kijakazi*, No. 20-cv-03209-CMA; 2022 WL 4726027, at *5 (D. Colo. Oct. 3, 2022) (same); *Harris v. Saul*, No. 19-cv-03715-NRN, 2021 WL 406080, at *2 (D. Colo. Feb. 5, 2021) (same).

However, Plaintiff argues that the treating physician rule should still apply. *Brief* [#13] at 11-18. Specifically, she puts forward three arguments: (1) 20 C.F.R. § 404.1520c(a) and 20 C.F.R. § 416.920c(a) ("the 2017 regulations") violate 5 U.S.C. § 706(2)(A); (2) alternatively, the Tenth Circuit's original case law regarding the treating physician rule still applies, even after the 2017 regulations were enacted; and (3) alternatively, that *Chevron* deference[7] does not apply to the 2017 regulations. *Id*. However, the Court sua sponte notes that the abrogated treating physician rule did not

---

[7] *Chevron* deference stems from *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

11

seem to apply to nurse practitioners to begin with. The Court first addresses this point and then addresses each of Plaintiff's arguments in turn.

### 1. Treating Physician Rule as Applied to Nurse Practitioners

Under the old treating physician rule, "only 'acceptable medical sources' [could] be considered treating sources . . . whose medical opinions may be entitled to controlling weight. SSR 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006). Acceptable medical sources consisted of licensed physicians, psychologists, optometrists, podiatrists, and pathologists. 20 C.F.R. § 416.913(a) (2013), *amended by* 20 C.F.R. § 416.913 (2017). Conversely, nurse practitioners were considered other medical sources, a separate and distinct category from acceptable medical sources. 20 C.F.R. § 416.913(d)(1) (2013), *amended by* 20 C.F.R. § 416.913 (2017).

Thus, the fact that nurse practitioners were not considered acceptable medical sources led many courts to explicitly hold that their opinions were not given controlling weight under the treating physician rule. *See, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983) (holding that "the diagnosis of a nurse practitioner should not be given the extra weight accorded to a treating physician"); *Pettigrew v. Berryhill*, No. 1:17-cv-01118, 2018 WL 3104229, at *10 n.6 (N.D. Ohio June 4, 2018) (stating that "nurse practitioners are not considered acceptable medical sources" and therefore do not implicate the treating physician rule); *Patrick v. Astrue*, No. 3:10cv371-DPJ-FKB, 2011 WL 3882818, at *3 (S.D. Miss. Aug. 15, 2011) (holding that, "[b]ecause a nurse practitioner is not an acceptable medical source, he or she cannot be considered as a treating source"). Thus, Plaintiff's argument that the opinion of Nurse Barajas, a nurse practitioner, should be accorded the weight of a treating physician's opinion under the

12

prior rule appears to be incorrect as a matter of law. Nevertheless, because the Court has not found any Tenth Circuit precedent explicitly resolving this issue, and because no party raised this point, the Court proceeds with its analysis of Plaintiff's arguments.

### 2. 5 U.S.C. 706(2)(A)

The Court turns to Plaintiff's first argument, i.e., that the 2017 regulations violate 5 U.S.C. § 706(2)(A). Pursuant to § 706(2)(A), a reviewing court must "hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." First, Plaintiff contends that the 2017 regulations abrogating the treating physician rule are not in accordance with law as they impermissibly "overrule the Judicial Branch's requirements for substantial evidence review" as laid out in 42 U.S.C. § 405(g). *Brief* [#13] at 12.

Plaintiff appears to have misinterpreted the 2017 regulations. 42 U.S.C. § 405(g) notes that "[t]he court shall have power to enter . . . a judgement affirming, modifying, or reversing the decision of the Commissioner of Social Security[.]" For the findings of the Commissioner to be conclusive, they must be "supported by substantial evidence." *Id.* Thus, when mentioning substantial evidence review, Plaintiff is likely referring to the district court's statutory mandate to analyze whether the Commissioner's findings are supported by substantial evidence when reviewing his decision. Notably, the 2017 regulations do not impinge on that mandate in any way.

Rather, "the revised regulations include procedures concerning *how* an ALJ should consider medical evidence—they do not change the 'substantial evidence' standard of review or redefine what constitutes 'substantial evidence' under § 405(g)." *C.D.I. v. Comm'r, Soc. Sec. Admin.*, No. 22-cv-00629-NYW, 2023 WL 2242505, at *5 (D. Colo.

13

Feb. 27, 2023) (rejecting an identical argument asserted in a brief filed by the instant Plaintiff's counsel, Mr. David Koppa). In other words, the 2017 regulations give ALJs more discretion in how they choose to weigh the evidence, while leaving intact the ALJ's burden to justify their conclusions with substantial evidence. *See Dany Z. v. Saul*, 531 F. Supp. 3d 871, 883 (D. Vt. 2021) (stating that, even after the new regulations, "[c]ourts must still review administrative decisions to determine whether they are supported by substantial evidence"). Thus, Plaintiff's argument that the 2017 regulations "overrule" § 405(g) is without merit.[8]

Next, Plaintiff contends that the rationale behind the 2017 regulations is "nonsensical" and is thus arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A). *Brief* [#13] at 13-15. In furtherance of this argument, Plaintiff notes that "nontreating physicians are less reliable," and, thus, an ALJ cannot reasonably "focus on the content rather than the source" of medical opinions. *Id.* at 14. Additionally, Plaintiff argues that the 2017 regulations run afoul of § 706(2)(A) because they are "contrary to the Agency's original reasoning when it codified the treating physician rule in its regulations[.]" *Id.* at 13. These arguments are without merit. Multiple courts have rejected analogous arguments and concluded that the 2017 regulations are not arbitrary, capricious, or contrary to statute. *See C.D.I.*, 2023 WL 2242505, at *5 (collecting cases).

---

[8] Plaintiff also argues that a constitutional issue is raised, because the 2017 regulations constitute the Executive Branch impermissibly overruling the Judicial Branch. *Brief* [#13] at 13. The Court fails to see how new agency regulations promulgated after a notice and comment period directly implicate any statutory or constitutional grant of power; thus, the Court rejects Plaintiff's constitutional argument. In making this determination, the Court reiterates the above point that the 2017 regulations do not change the substantial evidence standard of review.

14

For instance, in *Jones v. Saul*, the court analyzed whether the 2017 regulations were arbitrary and capricious. No. 2:19-cv-01273 AC, 2021 WL 620475, at *7 (E.D. Cal. Feb. 17, 2021). First, the court noted that "[a]n agency regulation is 'arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Id.* (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Moreover, it noted that "[a]n agency's determination will be upheld if it is 'supportable on any rational basis,' particularly 'when an agency is acting within its own sphere of expertise.'" *Id.* (citing *McFarland v. Kempthorne*, 545 F.3d 1106, 1113 (9th Cir. 2008) (quoting *Voyageurs Nat'l Park Ass'n v. Norton*, 381 F.3d 759, 763 (8th Cir. 2004)). The *Jones* court ultimately held that there was no reason to suspect that the 2017 regulations were arbitrary and capricious, particularly because the SSA was acting within its sphere of expertise and there was no evidence that the SSA "acted for an improper purpose or on an impermissible basis, that it relied on factors which Congress has not intended it to consider, that it entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or that its stated rationale is so implausible as to be inherently suspect." *Id.*

Similarly, in this case, Plaintiff has presented no evidence that the SSA improperly or impermissibly acted when it abolished the treating physician rule. The Court finds the *Jones* court's analysis persuasive and adopts and applies that analysis to this case. Furthermore, the Court is unconvinced that the 2017 regulations are arbitrary and

15

capricious because they are purportedly contrary to the SSA's prior reasoning when codifying the treating physician rule. Rather, "[a]n initial agency interpretation is not instantly carved in stone" and the agency must consider "this wisdom of its policy on a continuing basis." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 863 (1984). Simply put, the 2017 regulations are the product of rulemaking's dynamic process. Accordingly, the Court finds that Plaintiff has not demonstrated that the 2017 regulations violate § 706(2)(A).

### 3. Tenth Circuit Precedent

Plaintiff raises an alternative argument that, even if the 2017 regulations do not violate § 706(2)(A), Tenth Circuit precedent regarding the treating physician rule still applies until there is new precedent approving the new rules. *Brief* [#13] at 15-18. As noted above, Tenth Circuit case law had adopted a variation of the treating physician rule prior to its promulgation by the SSA in 1991. *Broadbent*, 698 F.2d at 412. Thus, Plaintiff argues that this precedent should control until new precedent approves the agency's 2017 regulations. *Brief* [#13] at 15 (citing *Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142 (10th Cir. 2016)).[9] Notably, Plaintiff's counsel, Mr. David Koppa, raised an identical argument to another court within this District in *C.D.I.*, 2023 WL 2242505, at **4-5. There, Judge Wang

---

[9] *Gutierrez-Brizuela v. Lynch* involved an appeal from the Bureau of Immigration Appeals ("BIA"). 834 F.3d at 1144. There, the court refused to allow a new immigration regulation to apply retroactively to a petitioner who had relied on conflicting judicial precedent. *Id.* at 1148. Notably, part of the reason the court found that reliance was justified was that the petitioner began relying on the old precedent without notice of the new regulation the BIA sought to apply. *Id.* at 1146. That reliance concern is ameliorated here, given that Plaintiff filed her application almost four years after the 2017 regulations were enacted. Additionally, another District of Colorado court considering this same argument noted that it could find no caselaw extending *Gutierrez-Brizuela* in the context of the treating physician rule and refused to extend its holding. *C.D.I*, 2023 WL 2242505, at *4 n.5. The Court similarly refuses to extend the holding of *Gutierrez-Brizuela* to apply in this context.

rejected this argument, finding that "[o]nly a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction." *Id.* at *4 (quoting *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982-83 (2005). Thus, she found that unless Tenth Circuit precedent held that the treating physician rule was based on an unambiguous interpretation of the Act, the agency's subsequent interpretation controls. *Id.*

Additionally, Judge Wang noted that "courts within this Circuit have agreed that '[t]he Tenth Circuit precedent that embodies the Treating Physician Rule . . . was not compelled by unambiguous statutory language, as the Social Security Act is silent as to the proper method for evaluating a treating physician's medical opinion.'" *Id.* at *5 (quoting *Manzanares v. Kijakazi*, No. cv 21-2 GBW, 2022 WL 4129411 at *4 (D.N.M. Sept. 12, 2022)). Thus, because the Tenth Circuit precedent did not hold that the statute unambiguously precluded the 2017 regulations, Judge Wang found that the 2017 regulations control so long as they are entitled to *Chevron* deference. *Id.* The Court finds this analysis persuasive, noting that, in the instant case, Plaintiff similarly failed to cite to any Tenth Circuit precedent holding that the Act unambiguously forecloses the 2017 regulations. *See generally, Brief* [#13]. Accordingly, the Court adopts Judge Wang's analysis, and holds that, if the 2017 regulations are entitled to *Chevron* deference, then they control over any Tenth Circuit precedent.

### 4. *Chevron* Deference

Plaintiff raises a final argument that the 2017 regulations are not entitled to *Chevron* deference. *Brief* [#13] at 16. *Chevron* deference is a legal test which determines

when courts should defer to administrative agencies' interpretations of their enabling statutes. *Chevron, U.S.A., Inc.*, 467 U.S. at 843. It is a two-step analysis. *Id.* First, courts inquire if Congress has "directly spoken to the precise question at issue." *Id.* If so, the agency must follow "the unambiguously expressed intent of Congress." *Id.* However, if the statute is silent or ambiguous about the issue, the court analyzes whether the agency's interpretation is "based on a permissible construction of the statute." *Id.*

Here, Plaintiff asserts that the 2017 regulations fail at the first step of *Chevron* because there "is no ambiguity for the Social Security Administration to interpret." *Brief* [#13] at 16. Plaintiff provides no statutory citations to support a finding that the Act unambiguously requires the SSA to adhere to the treating physician rule.[10] *See generally Brief* [#13]. Rather, Plaintiff seems to refer to her earlier argument discussed in Section III.C.2. above that the power of judicial review is unambiguously delegated to the courts. *Id.* at 16. Notably, Plaintiff's counsel also raised this identical argument in *C.D.I.*, 2023 WL 2242505, at *5. There, Judge Wang rejected this argument, finding that the 2017 regulations simply modify the discretion ALJs have when weighing evidence without implicating the substantial evidence standard of review itself. Thus, the power of judicial review is not implicated. *Id.* The Court finds Judge Wang's analysis persuasive and adopts it in this case.

Furthermore, the Act's provisions are ambiguous as to how the Commissioner must evaluate medical opinion evidence. The Act notes that "the Commissioner of Social Security shall make every reasonable effort to obtain from the individual's treating physician . . . all medical evidence . . . prior to evaluating medical evidence obtained from

---

[10] In fact, Plaintiff does not cite to the statute at all when putting forward her *Chevron* step one argument. *See generally Brief* [#13].

18

any other source." 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H)(i). However, as noted in Section III.C.3. above, the statute is silent as to how the agency should evaluate that evidence. *See also Crystal R. E. v. Kijakazi*, No. 20-cv-00319-SH, 2022 WL 446023 (N.D. Okla. Feb. 14, 2022) ("[T]he [Act is] silent as to the proper method of evaluating a treating physician's medical opinion"). Furthermore, in *C.D.I.*, Judge Wang's analysis similarly found that "[n]umerous courts have recognized the Act is silent or ambiguous as to how to properly assign weight to medical source opinions." 2023 WL 2242505, at *6 (collecting cases). Accordingly, Congress did not speak directly to the issue at question, and the Court should defer to the agency so long as its interpretation is permissible.

Here, the 2017 regulations are a permissible interpretation of the statute. As noted in Section III.C.2., nothing supports a finding that these regulations are arbitrary and capricious. Accordingly, the Court finds that the 2017 regulations satisfy *Chevron* and are a valid exercise of the Commissioner's authority.

### 5. Nurse Barajas's Opinion

For the reasons stated above, the ALJ used the correct legal test in following the 2017 regulations when evaluating Nurse Barajas's opinion. In this evaluation, the ALJ determined that Nurse Barajas's findings regarding the extent of Plaintiff's limitations were not supported by the findings in her own treatment notes. Tr. 31. Furthermore, the ALJ found her opinion to be inconsistent with the other medical evidence. *Id.* As the two most important factors when evaluating medical opinions under the 2017 regulations are supportability and consistency, the Court finds that ALJ committed no reversible error in finding Nurse Barajas's opinion unpersuasive.

## IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

IT IS FURTHER **ORDERED** that the Clerk of Court shall **enter judgment** in favor of Defendant and **close** this case.

Dated: March 19, 2024                                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge